
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| POWER CITY ELECTRIC INC., | ) | |
| | ) | No. 35676-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON STATE DEPARTMENT | ) | UNPUBLISHED OPINION |
| OF LABOR AND INDUSTRIES, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — Power City Electric (PCE) appeals from a decision of the Board of

Industrial Insurance Appeals that found it to have committed four serious violations of

the Washington Administrative Code (WAC). Concerned about the adequacy of the

Board's factual findings, we remand for more detailed findings and clarification of the

standard applied by the Board in its ruling.

FACTS

An effort to reroute underground power cables in Pasco is the basis for this case.

PCE was hired to move the power cables and had to dig a hole on the side of Court Street

to do so. A Department of Labor and Industries (DLI) compliance officer, Reynaldo

Gomez, was driving by the scene when he noticed only the helmeted head of a worker in the hole. Concerned about the depth of the dig, he stopped to investigate.

Two men stepped out of the excavation by use of a notch dug into the shallower south side of the hole. Dirt from the dig was piled immediately next to the deep end of the trench.[1] The excavation measured about six feet wide by ten feet long. A one foot section on the north side of the dig was measured to be six feet deep. The depth ranged from 30 to 48 inches in the remainder of the dig. Gomez graded the sandy soil in the excavation as Type C—unstable. There were no measures in place to prevent collapse of either the hole or of the spoils pile. Photographs of the scene were taken.

The two workers had been clearing fiber optic lines by shovel in the shallower side of the trench. Their work zone was within 3.5 feet of the six foot deep section where the backhoe was excavating.

DLI issued four major infraction notices, fining PCE $7,200. The Industrial Appeals Judge (IAJ) heard testimony from Mr. Gomez and the PCE foreman, Julian McCarthy. The IAJ upheld the citation for failure to provide a safe means of ingress and egress, but rejected the other citations. Both PCE and DLI appealed.

The Board upheld all four citations and the $7,200 in total fines for the four serious violations. The Board entered a decision that included an extensive discussion as

---

[1] This is referred to as the "spoils pile."

well as findings of fact and conclusions of law. Clerk's Papers (CP) at 5-12. The

superior court adopted the Board's conclusions of law and affirmed its decision.

PCE appealed to this court. A panel heard oral argument on the case.

ANALYSIS

This appeal challenges, for varying reasons, whether the record supports the

Board's factual findings. PCE also alleges that the Board applied the wrong standard in

assessing the risk of danger to workers. In order to explain our uncertainty and the need

for clarification by the Board, we need to address some of the regulations at issue and the

corresponding findings.

In order to establish a serious violation of state worker safety standards, RCW

49.17.180 requires proof that "death or serious physical harm could result" from an

existing condition. With respect to construction work, state safety standards are set out in

chapter 296-155 WAC. Washington adopted the federal standards governing the role of

likelihood of harm in assessing a violation of the state safety standards in *Adkins v.*

*Aluminum Company*, 110 Wn.2d 128, 750 P.2d 1257, 756 P.2d 142 (1988). A violation

of safety standards is established when an employee has "access" to the unsafe condition;

access is established when DLI shows "a reasonable predictability that, in the course of

their duties, employees will be, are, or have been in the zone of danger." *Id*. at 147

(emphasis omitted). *Accord*, *Mid Mountain v. Labor & Indus.*, 136 Wn. App. 1, 5, 146

P.3d 1212 (2006) (applying *Adkins* standard to an excavation setting).

WAC 296-155-657(1) requires that workers in an excavation be protected from the dangers of cave-ins by either sloping the excavation or installing protective systems. WAC 296-155-657(2), (3). No protection is needed if the excavation is less than four feet *and* an examination reveals "no indication of a potential cave-in." WAC 296-155-657(1).

Although the discussion segment of the Board's decision addressed the facts in a detailed manner similar to (but more extensive than) our brief recitation of them at the beginning of this opinion, its formal findings of fact are more conclusory. Finding 2 states in part that PCE:

> exposed its employees to potential cave-ins in a trench excavation of four feet or more in depth. The workers had access to the hazard posed by the unprotected portion of the excavation while in the course of their normal duties.

CP at 10.

This finding lacks detail allowing this court to understand *how* PCE exposed its workers and *how* they had access to the hazard. Several possibilities exist in the record that would support the Board's ruling. The excavation was not sloped, nor were there protective systems installed. Thus, if the workers were working in a portion of the trench that was four feet or deeper, the violation would be clear. However, there is no fact finding that the men were working in that area. Similarly, the south side of the trench was described as 30 to 48 inches deep, with no clear finding that the men worked in that

4

portion of the trench either.  Moreover, the lack of sloping or protective equipment, in combination with the Type C soil, may have been hazardous in and of itself.  The Board's reasoning on this point is unclear.

Instead, finding 2 simply says that the men had "access" to areas "four feet or more in depth."  The word "access" is insufficiently descriptive to explain how the men were endangered.  Were they working in an area that was four feet deep?  Was the soil in danger of collapsing on them?  Did the hole slope sufficiently that a worker might be expected to tumble into the deep end?  Were they working so close to the deeper portion of the trench that they would have been endangered by a collapse occurring on the north side?

In contrast to these findings are the details in *Mid Mountain*.  There the excavation occurred in Type B soil that required an excavation of four feet six inches deep to have a similar set back and that the "zone of danger" was an area within four feet six inches of the south wall.  136 Wn. App. at 6.  As in this case, the employer there argued that its employees "were working in a portion of the trench that was less than four feet deep and more than five feet away from the zone of danger."  *Id*. at 5.  Based on the requirements for Type B soil and the evidence of the dimensions of the excavation, the *Mid Mountain* court was able to conclude that the worker was working within close proximity of the zone of danger and it was reasonably likely that he could have walked into that zone during the normal course of his work.  *Id*. at 7.

The Board's findings in this case are not sufficiently detailed to allow this court to analyze the contentions in the same manner as *Mid Mountain*. We do not know what facts the Board relied on in making its determination and thus cannot discern why the Board considered the workers within the "zone of danger". We also do not know whether, assuming the area to which the workers were exposed was under four feet, an examination revealed "no indication of a potential cave-in."

Similarly, the findings related to spoils pile do not suggest why the pile constituted a hazard to the workers. The presence of the pile within two feet of the excavation constituted a violation of WAC 296-155-655(10)(b), but why it constituted a major violation due to the risk it imposed to the workers is not explained in the Board's findings. Did the pile threaten to collapse the north end of the trench? Was it likely to slide into the trench of its own accord?

Thus, we remand to the Board for entry of more detailed findings of fact that explain its determination that the PCE workers had access to the zone of danger. Because PCE argues that the Board applied the wrong standard in making its determination, we also direct the Board to ascertain that it applied the *Adkins* "reasonable predictability" standard to its determination that the workers had access to the zone of danger.

This court will retain jurisdiction over the appeal. Upon entry of appropriate findings, they shall be transmitted to the clerk of this court. The panel will determine

No. 35676-1-III
*Power City Elec. v. Dep't of Labor & Indus.*

whether additional briefing is necessary, but will remain open to a request from either

party to file a supplemental brief concerning the supplemental findings.

Remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, J.

Siddoway, J.